IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 11-40011 |
| MOONING OVER BROADWAY, L.L.C., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

## DEBTOR'S DISCLOSURE STATEMENT

### PURPOSE OF THIS DISCLOSURE STATEMENT:

Mooning Over Broadway, L.L.C. ("Debtor") has prepared this Disclosure Statement (the "Disclosure Statement") in connection with its solicitation of acceptances of the Debtor's Plan of Reorganization dated January 3, 2011 (the "Plan") filed in the Debtor's bankruptcy reorganization case (the "Reorganization Case") under Chapter 11, Title 11, United States Code (the "Bankruptcy Code"), pending before the United States Bankruptcy Court for the Western District of Missouri, Western Division (the "Bankruptcy Court"). After a noticed hearing and by order entered on _____, 2011, the Bankruptcy Court approved the Disclosure Statement as containing information of a kind, and in sufficient detail as far as is reasonably practicable, that would enable a hypothetical reasonable investor typical of holders of claims of the classes being solicited to make an informed judgment whether to vote to accept or reject the Plan. This Disclosure Statement is the only document authorized by the Court to be used in connection with the solicitation of votes accepting or rejecting the Plan.

01019690.WPD

The Plan reflects the Debtor's determined effort to maintain the economic integrity of the business of Debtor and promote the greatest value for the benefit of its creditors. The Debtor believes that creditors will receive more value under the Plan than they would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code and that the Plan offers prospects for the highest and best recovery to creditors that can be obtained.

Your vote on the Plan is important. As a general rule, confirmation of the Plan requires acceptance by each of the voting classes. Pursuant to § 1126 of the Bankruptcy Code, in order for the Plan to be accepted by a voting class, creditors holding at least two-thirds in dollar amount and more than one-half in number of claims allowed for voting purposes in such class and who actually vote to accept or reject the Plan must vote in favor of the Plan. Any class that fails to accept the Plan will be deemed to have rejected the Plan.

**THIS DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN BY EACH HOLDER OF A CLAIM OR INTEREST ENTITLED TO VOTE THEREON, BUT IS INTENDED TO AID AND SUPPLEMENT SUCH REVIEW. THE DESCRIPTION OF THE PLAN HEREIN IS A SUMMARY ONLY. HOLDERS OF CLAIMS ARE CAUTIONED TO REVIEW THE PLAN ITSELF AND ANY RELATED AGREEMENTS OR TRANSACTIONS FOR A FULL UNDERSTANDING OF ITS PROVISIONS. THE DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN. THE TERMS OF THE PLAN AND ANY RELATED AGREEMENTS ARE CONTROLLING IF ANY INCONSISTENCY EXISTS BETWEEN THEM AND THIS DISCLOSURE STATEMENT.**

The following is a list of each of the exhibits accompanying this Disclosure Statement:

> EXHIBIT A  –  The Plan
>
> EXHIBIT B  –  Historical Cash Flow and Projected Reorganized Cash Flow

This Disclosure Statement, the Plan, and all exhibits remain subject to modification and amendment in their entirety. All financial information provided herein constitutes the best information available to the Debtor as of the date of the filing of this Disclosure Statement and remains subject to revision.

Capitalized terms used in the Disclosure Statement that are not specifically defined herein have the meanings set forth in the Plan. All exhibits to the Disclosure Statement are incorporated by reference into and made a part of the Disclosure Statement.

**YOU SHOULD READ THE DISCLOSURE STATEMENT AND ITS EXHIBITS IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN. NO STATEMENTS OR INFORMATION CONCERNING THE DEBTOR OR ANY OTHER ENTITY DESCRIBED IN THE DISCLOSURE STATEMENT OR THE PLAN, PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS, PROFITS, FINANCIAL CONDITIONS, ASSETS, LIABILITIES, OR THE DEBT SECURITIES TO BE ISSUED PURSUANT TO THE PLAN, ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THE DISCLOSURE STATEMENT.**

The financial information set forth in the Disclosure Statement has not been audited by independent certified public accountants. The Debtor is unable to represent and warrant that the information set forth in the Disclosure Statement is without

any inaccuracy.  To the extent practicable, however, the information has been prepared from the Debtor's financial books and records and great effort has been made to ensure that all such information is fairly presented.

## PROCEDURAL INFORMATION

Voting.  Under § 1126 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3018(a), only creditors whose claims are deemed allowed pursuant to § 502 of the Bankruptcy Code or have been allowed by an Order of the Bankruptcy Court are entitled to vote on the Plan.

Except as otherwise provided in the Disclosure Order, ballots are being sent with the Disclosure Statement to the known holders of all claims against the Debtor as of the commencement date of this case on January 3, 2011, including those that have been or will be objected to by the Debtor.  These parties may distribute the ballots to the beneficial owners of the claims as they deem necessary.  The holders of claims and interests that have been objected to by the Debtor are not entitled to vote on the Plan unless otherwise ordered by the Bankruptcy Court in accordance with Federal Rule of Bankruptcy Procedure 3018(a), which provides, in pertinent part, that: "Notwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."  Additional rules governing the voting process are set forth in the Disclosure Order that accompanies the Disclosure Statement.

All pleadings and other documents referred to in the Disclosure Statement as being on file with the Bankruptcy Court are available for inspection and review during normal business hours at the office of the Clerk of the Bankruptcy Court, 400

East Ninth Street, Kansas City, Missouri 64106. In addition, such pleadings and documents may be viewed on line at http://www.mow.uscourts.gov/bk_cmecf.htm using PACER access. ANY CHANGES TO THESE DOCUMENTS WILL BE DESCRIBED AT THE HEARING ON THE CONFIRMATION OF THE PLAN.

After carefully reviewing the Plan, the exhibits annexed thereto, this Disclosure Statement, and exhibits annexed thereto, please indicate your vote(s) with respect to the Plan on the ballot sent to you and return it by the deadline to Debtor's counsel. If you have a claim in more than one voting class, you are entitled to vote each claim. **PLEASE VOTE AND RETURN EVERY BALLOT THAT YOU RECEIVE. IN ORDER TO BE COUNTED, BALLOTS MUST BE RECEIVED BY _____, 2011.**

The Court will hold a hearing on confirmation of the Plan commencing at _____ p.m. on _____, 2011 (the "Confirmation Hearing").

THE DEBTOR BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTEREST OF CREDITORS AND RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN.


Dated:    January 3, 2011

# I. <u>INTRODUCTION</u>

## A.   <u>BRIEF EXPLANATION OF CHAPTER 11</u>

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. It allows a business debtor to remain in operation and work out its financial difficulties. Unlike a case under Chapter 7 of the Bankruptcy Code, which automatically results in the appointment of a trustee to manage the affairs of the entity filing under the Bankruptcy Code, the debtor in a Chapter 11 case remains in control of the estate as the "debtor in possession," generally with the same powers and duties as a trustee, unless and until a creditors' committee or other party obtains the appointment of a trustee to operate the business.

Upon filing a Petition for Chapter 11 reorganization and during the pendency of a reorganization case, the Bankruptcy Code imposes an automatic stay against creditors' attempts to collect or enforce, through litigation or otherwise, claims against the debtor. The automatic stay provisions of § 362 of the Bankruptcy Code, unless lifted by court order, will generally prohibit or restrict attempts by secured or unsecured creditors or other claimants to collect or enforce any claims against the debtor that arose prior to the commencement of the Chapter 11 case.

Formulation and confirmation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. The plan of reorganization is the vehicle for satisfying the holders of claims against and equity interests in a debtor. After a plan of reorganization has been filed, the holders of claims against or interests in a debtor are permitted to vote to accept or reject the plan. Section 1125 of the Bankruptcy Code requires the debtor, before soliciting acceptances of the proposed plan,

to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. This Disclosure Statement is presented to holders of claims in impaired classes against and interests in impaired classes in the Debtor to satisfy the requirements of § 1125 of the Bankruptcy Code.

Chapter 11 does not require that each holder of a claim against or interest in a debtor vote in favor of a plan of reorganization in order for the Bankruptcy Court to confirm the plan. At a minimum, however, a plan must be accepted by a majority in number and at least two-thirds in amount of those claims actually voting in at least one class of claims impaired under such plan. In the present case, holders of claims who fail to return ballots will not be counted as either accepting or rejecting the plan for purposes of determining whether the plan is adopted or rejected.

Classes of claims or interests that are not "impaired" under a plan of reorganization are conclusively presumed to have accepted the plan of reorganization. Consequently, holders of claims or interests in such classes are not entitled to vote. Acceptances of the plan in this case are being solicited only from those who hold claims in an impaired class. A class of claims is impaired under a plan of reorgani-zation unless, as set forth in § 1124 of the Bankruptcy Code, with respect to each claim or equity interest of such class, the plan: (1) leaves unaltered the legal, equi-table, and contractual rights of the holder of such claim or interest; (2) notwithstand-ing any contractual provision or applicable law that entitles the holder of a claim or interest after the occurrence of a default: (a) cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code other than

a default of a kind specified in § 365(b)(2) of the Bankruptcy Code; (b) reinstates the maturity of such claim or interest as such maturity existed before such default; (c) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (d) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; or (3) provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to: (a) with respect to a claim, the allowed amount of such claim; or (b) with respect to an interest, if applicable, the greater of: (i) any fixed liquidation preference to which the terms of any security representing such interest entitle the holder of such interest; or (ii) any fixed price at which the debtor, under the terms of the security, may redeem such security from such holder.

Even if all classes of claims and interests accept a plan of reorganization, the Bankruptcy Court nevertheless might not confirm that plan. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a plan of reorganization and, among other things, requires that a plan of reorganization be (1) in the "best interests" of creditors and equity-holders and (2) feasible. The "best interests" test generally requires that the value of the consideration to be distributed under a plan to holders of claims or interests who have not voted to accept the plan may not be less than those parties would receive if the debtor were liquidated under a hypothetical liquidation occurring under Chapter 7 of the Bankruptcy Code. Under the "feasibility" requirement, the court generally must find that there is a reasonable prob-

ability that the debtor will be able to perform the obligations incurred under the plan and to continue operations without the need for further financial reorganization.

If the proponent of a plan of reorganization seeks confirmation of such plan under the "cramdown" provisions of § 1129(b) of the Bankruptcy Code, the plan must meet all applicable requirements of § 1129(a) of the Bankruptcy Code (except § 1129(a)(8), which requires acceptance by all impaired classes).   Among these requirements are that the plan must (1) comply with the applicable provisions of the Bankruptcy Code and other applicable law, (2) be proposed in good faith, and (3) be accepted by at least one impaired class of creditors.

The court may confirm a plan of reorganization even though one or more (but not all) impaired classes of claims and interests reject it if the proponent of the plan shows, among other things, that the plan (1) does not discriminate unfairly and (2) is fair and equitable with respect to each impaired class of claims or interests that has not accepted the plan of reorganization.

Under § 1129(b) of the Bankruptcy Code, a plan of reorganization is "fair and equitable" as to a class if, among other things, the plan provides:   (1) with respect to secured claims, that each holder of such claim included in the rejecting class will receive or retain on account of such claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; and (2) with respect to unsecured claims and interests, that the holder of any claim or interest that is junior to the claims or interests of such class will not receive or retain on account of such junior claim or interest any property at all unless the senior class is paid in full.  The Bankruptcy Court must further find that the economic terms of the plan of

reorganization do not unfairly discriminate with respect to the particular objecting class, as provided in § 1129(b) of the Bankruptcy Code.

Other significant aspects of Chapter 11 are (1) a debtor's right and duty to seek avoidance of certain pre-Petition or post-Petition transfers of interests in the debtor's estate and (2) the right and duty of a debtor to evaluate all pre-Petition executory (i.e., uncompleted) contracts (including unexpired leases) and to assume or reject such contracts.

## B.   OVERVIEW OF THE REORGANIZATION CASE

The Debtor's purpose in seeking relief under Chapter 11 and in proposing a Plan of Reorganization is to pay its secured, priority, and unsecured creditors in a timely fashion.  The Debtor proposes to retain its existing property and continue its business of leasing its property to third parties and/or selling it for redevelopment. Debtor will pay all creditors in full with interest over time through the Plan, using the income the Debtor earns after confirmation to fund Plan payments.

## C.   OVERVIEW OF THE PLAN

The holders of Claims against the Debtor will be classified and receive the treatment specified in the Plan.  Classification of such Claims and Interests, distributions to Claimants and other aspects of the consummation of the Plan are discussed in greater detail in Section IV of the Disclosure Statement entitled "Summary of the Plan."  However, for overview purposes only, the classification and treatment of certain secured, priority, and unsecured Claims are summarized below.

The Plan divides Claims against and Interests in the Debtor into various Classes in accordance with the Bankruptcy Code.  Secured Claims, priority unsecured

Claims and, non-priority unsecured Claims each are assigned to separate Classes under the Plan. A Claim shall receive a distribution under the Plan only if it is an "Allowed Claim" or an "Allowed Interest," as defined in the Plan.

Administrative expenses, priority unsecured taxes, and other Allowed Claims will be treated in a manner consistent with the requirements set forth in the Bankruptcy Code. The holders of secured Allowed Claims, as determined in accordance with § 506 of the Bankruptcy Code, are classified separately.

A summary of the classification and treatment of Allowed Claims is set forth in subsection C of Section IV of the Disclosure Statement entitled "Classification and Treatment of Allowed Claims."

**D.   HISTORICAL OPERATIONS**

Debtor was formed on April 19, 1996 under the laws of the state of Missouri. It was formed to develop, own, and/or sell real estate at 4726 through 4736 Summit in the heart of the Country Club Plaza in Kansas City, Missouri. It was successful in acquiring the real estate and owning and operating it over a number of years. It leases apartments in the buildings to tenants. It has also developed plans and taken various steps in the past to redevelop the property for a use other than residential apartment dwellings. To date, Debtor's efforts have been in the planning stage and no actual redevelopment has occurred.

**E.   THE DEBTOR'S PRE-PETITION PROBLEMS**

Prior to 2008, the Debtor operated the property as an apartment complex. Gross rents in 2007 aggregated $243,951, which would be sufficient to cover the operating expenses of the Debtor and make debt service payments.

01019690.WPD

- 11 -

In 2008, the Debtor retained the services of Ray Braswell to help explore the possibility of converting the property to a high-rise hotel, as it was zoned R-5 and is only restricted for height above 12 stories. In 2009, the Debtor contracted with Bob Gray to sell the property for the sum of $5,000,000. During the due diligence period prior to closing, the capital markets virtually disappeared and the transaction did not close.

During 2008 and 2009, since the Debtor's principal focus was either to redevelop the property or to sell the property to a third party for redevelopment, Debtor switched its operations from obtaining annual leases to having month-to-month tenants. Maintenance became deferred and occupancy became sporadic as the redevelopment plans were being pursued. When the planned sale did not occur, the Debtor had 20 vacancies out of 36 units and many units needed deferred maintenance performed prior to re-renting. Debtor has begun repairing vacant units and placing them on the market for rent. In mid-December 2010, there were 25 units rented. Two tenants have advised Debtor that the landlord's representatives told them that the property was being foreclosed and their leases would be void. Those two tenants are leaving the property. It is feared that other tenants may take similar actions.

The Debtor made arrangements to obtain sufficient funding to pre-pay interest for a year, perform deferred maintenance on the remaining vacant units, and operate the project on a stabilized cash flow. The first mortgage lender and Debtor were not able to reach terms on an extension of the first mortgage loan and the first mortgage-holder subsequently published notice for a foreclosure sale in January 2011.

F.    **PRINCIPAL CAUSE OF THE FILING OF THE CHAPTER 11 CASE**

After the workout negotiations between Debtor and the first mortgage-holder broke down, the first mortgage-holder published a notice that Debtor's property would be sold at foreclosure on Friday, January 7, 2011, at 2:00 p.m. The first mortgage-holder also notified Debtor's tenants to pay rent directly to him.

The Debtor, accordingly, has filed this Chapter 11 proceeding seeking to reorganize its indebtedness, retain its property, and pay off all creditors in full with interest.

## II. **THE REORGANIZATION CASE**

A.    **POST-PETITION ADMINISTRATION**

Subsequent to the filing of the Chapter 11 Petition, the Debtor will operate in the ordinary course of business. It will collect rents, perform deferred maintenance, and engage in additional leasing activities. It will continue to do so pending confirmation of its Plan and, thereafter, will operate its business as set forth below in such a fashion to pay the creditors the amounts required by the Plan of Reorganization.

## III. **THE REORGANIZED DEBTOR**

On the Effective Date of the Plan, the Reorganized Debtor will assume and continue to own and operate the business and assets presently being operated by the Debtor. The Reorganized Debtor will take all steps necessary to protect its interest in its assets and to restore their value through appropriate management of the Reorganized Debtor's operations.

Aandrea Carter will be Debtor's manager and will serve without compensation.

The financial projections set forth in Exhibit B are the representations of the Debtor of the future financial performance for the Debtor's business. The Plan is

expected to be in effect from 2011 through 2014, a period of four years. The projected cash flow statements are unaudited and are not necessarily consistent with generally accepted accounting principles. The financial projections were prepared by the Debtor.

MUCH EFFORT HAS BEEN MADE TO ENSURE THAT THE FINANCIAL PROJECTIONS AND THE ASSUMPTIONS ON WHICH THEY ARE BASED ARE ACCURATE AND REASONABLE. HOWEVER, NO REPRESENTATION CAN BE MADE WITH RESPECT TO THE ACCURACY OF THE FINANCIAL PROJECTIONS OR THE ABILITY OF THE REORGANIZED DEBTOR TO ACHIEVE THE PROJECTED RESULTS. MANY OF THE ASSUMPTIONS UPON WHICH THE FINANCIAL PROJECTIONS ARE BASED ARE SUBJECT TO MAJOR UNCERTAINTIES. SOME OR ALL OF THE ASSUMPTIONS MAY NOT MATERIALIZE, AND UNANTICIPATED EVENTS AND CIRCUMSTANCES MAY OCCUR THAT WILL AFFECT THE FINANCIAL PROJECTIONS, AND THE ASSUMPTIONS ON WHICH THEY ARE BASED. ACCORDINGLY, THE ACTUAL RESULTS ACHIEVED THROUGHOUT THE PROJECTION PERIOD MAY VARY FROM THE PROJECTED RESULTS SET FORTH IN THE FINANCIAL PROJECTIONS AND THE VARIATIONS MAY BE MATERIAL. ALL PARTIES ARE URGED TO CAREFULLY REVIEW THE FINANCIAL PROJECTIONS AND THE ASSUMPTIONS ON WHICH THEY ARE BASED BEFORE DECIDING TO VOTE TO ACCEPT OR REJECT THE PLAN.

### IV.  **SUMMARY OF THE PLAN**

The Debtor's Plan in its entirety is attached as Exhibit A to the Disclosure Statement. THE FOLLOWING DISCUSSION OF THE PLAN CONSTITUTES A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY THE TERMS OF THE PLAN ITSELF.

01019690.WPD

YOU ARE URGED TO READ THE PLAN ITSELF BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.  ANY CHANGES MADE TO THE PLAN WILL BE DESCRIBED AT THE HEARING ON THE CONFIRMATION OF THE PLAN.

## A.   **GENERAL DESCRIPTION OF THE PLAN**

The Plan generally proposes that the Debtor will pay its secured and priority obligations in full together with interest at 6% amortized over various periods.  In the case of the Class 1 and Class 2 Claims, the debt will be amortized based on a 25-year amortization at the rate of 6% per annum, with a balloon payment at the end of four years.  Classes 3 and 4 will be amortized over a four-year period with interest at the rate of 6% per annum.  The Debtor will continue in possession of its property and continue its business of renting it as well as exploring sale of the property for redevelopment. Plan payments will come from the income the Debtor earns after confirmation.

Rent from tenants will total $20,000 per month and expenses will average $4,824 per month.  Net operating income, therefore, will be $15,176.

The Debtor's monthly payments, by Class, are estimated to be as follows:

| Class 1 | $  12,802.00 |
| Class 2 | 805.00 |
| Class 3 | 1,139.00 |
| Class 4 | 381.00 |
| **Total:** | **$  15,127.00** |

The only expense Debtor will pay directly will be real estate taxes of $15,000 per year.

01019690.WPD

The projections in attached Exhibit B reflect sufficient income and cash flow for the Debtor to fund the Plan. Debtor anticipates that it will be able to refinance in order to permit it to make the balloon payment contemplated at the end of four years.

**B.  UNCLASSIFIED ADMINISTRATIVE EXPENSES CLAIMS**

Administrative expense Allowed Claims are treated under the Plan in the manner required by the Bankruptcy Code and, therefore, are unclassified. The Plan provides that all administrative expense Allowed Claims, which include the costs and expenses incurred in connection with the Reorganization Case subsequent to the filing date, will be paid in full in cash according to the ordinary terms under which they were incurred or, if due and not previously paid, on the Effective Date. They include all fees and costs of the Debtor's attorneys, accountants, consultants and other professionals employed at the expense of the Debtor's Estate pursuant to Final Orders of the Bankruptcy Court. Such fees, costs and expenses will be paid at a time and in an amount allowed by the Bankruptcy Court.

All payments to be made to authorized professionals in the Reorganization Case will be made in accordance with specific procedures established by the Bankruptcy Court relating to the payment of interim compensation and are subject to final allowance by the Bankruptcy Court. After the Confirmation Date, the Bankruptcy Court may review all previously unreviewed fees paid and to be paid to the authorized professionals and any additional requests for compensation and reimbursement of expenses. The Bankruptcy Court may then determine the final fee and cost allowances for these authorized professionals to the extent their fees and costs need to be determined in a final fee and cost allowance.

At the present time, the Court has pending the approval of employment by the Chapter 11 Estate of the law firm of Berman DeLeve Kuchan & Chapman.

## C.   CLASSIFICATION AND TREATMENT OF ALLOWED CLAIMS

The Plan divides Allowed Claims against the Debtor into various Classes which the Debtor believes are in accordance with the classification requirements of the Bankruptcy Code.  The term "Allowed Claim" is defined in § 1.1.1 of the Plan.  Distributions to the holders of Allowed Claims under the Plan are in full satisfaction of those Allowed Claims (including any interest accrued and allowable thereon).   All Claims against the Debtor arising prior to the Confirmation Date will be discharged under the Plan on the Effective Date, except to the extent otherwise provided in the Plan or the Confirmation Order.

### 1.   Description of Classification and Treatment

A summary of the classification and treatment of Allowed Claims under the Plan is set forth below in subsection 3.  The Debtor has made every effort to anticipate the amount of Allowed Claims in each Class.  The resolution of Disputed Claims may involve many factual and legal issues which may or may not be resolved in the Debtor's favor.  Accordingly, no assurances can be given that the anticipated amount of Allowed Claims in each Class will be achieved.

Only holders of Allowed Claims will receive distributions under the Plan until such time as all Allowed Claims are paid in full.  The distributions are in full settlement of all rights of the holders of such Allowed Claims.  The Plan contemplates a series of events pursuant to which funds will be allocated and distributions will be made.  Should certain of these events not take place, the Debtor will amend the Plan

to adjust the timing of the payment streams to the various Classes of Claimants of the Debtor. Disputed Claims will be resolved by the Bankruptcy Court, and any amount finally allowed by the Court will be dealt with under the Plan. The amount of Disputed Claims included in the Plan calculations set forth below represents Debtor's estimate of the likely range of the amount that will be finally allowed by the Court.

**2.    Unclaimed Distributions**

It is the responsibility of each holder of an Allowed Claim to notify the Debtor promptly of any change in such holder's address. Failure to (i) so notify the Debtor or (ii) cash a Distribution Check may result in a Distribution being an Unclaimed Distribution. In such an event, the holder will forfeit any rights with respect thereto.

**3.    Treatment of Classes**

The Plan divides the creditors into distinct Classes depending on the type of Claim and what secures the Claim. The Classes into which the Plan divides Claims are as follows:

(1)    **Class 1** is the Claim of Northern Land Company, Inc. in the total amount of approximately $1,987,000 secured by a Lien on Debtor's real property. (See Liquidation Table in Section VII.A.1 showing the collateral and Debtor's opinion of collateral values in the event of liquidation.)

(2)    **Class 2** is the Claim of Plaza View Skyline, L.L.C. in the amount of $125,000 secured by a second Lien on Debtor's real property.

(3)    **Class 3** is the Claim of the Jackson County Collector in the sum of $48,507. (See Liquidation Table in Section VII.A.1 showing the collateral and the Debtor's opinion of collateral values in the event of liquidation.)

(4)   **Class 4** consists of the general unsecured Claims in the amount of $16,232.

With respect to such Classes, the Plan provides for the following:

(1)   **Class 1** is the Claim of Northern Land Company, Inc. in the total amount of approximately $1,987,000 secured by a Lien on Debtor's real property. Class 1 will be paid in full together with interest at the rate of 6% per annum in monthly payments equal to monthly payments to amortize the principal balance over a 25-year period, with a balloon payment at the end of four years.  Repayment of Class 1 will be secured in the same manner as this obligation was secured pre-Petition.

(2)   Class 2 is the claim of Plaza View Skyline, L.L.C. in the sum of $125,000 secured by a second Lien on Debtor's real property.  Class 2 will be paid in full together with interest at the rate of 6% per annum in monthly installments over a 25-year period with a balloon payment at the end of four years, secured in the same manner as the pre-Petition obligation.

(3)   **Class 3** is the Claim of the Jackson County Collector in the sum of $48,507 and is a priority tax claim.  Class 3 will be paid in full together with interest at the contract rate of 6% per annum in monthly installments over four years.

(4)   **Class 4** are unsecured Claims and will be paid in full together with interest at the rate of 6% amortized over 48 months.

**D.   TREATMENT OF EQUITY INTEREST HOLDERS**

The holders of equity interests in Debtor shall retain their equity interests in the Reorganized Debtor equal to the member interests they held in Debtor pre-Petition.

## V. **MEANS FOR EXECUTING THE PLAN**

The Debtor will execute the Plan through a continuation of its operations as contemplated under the Plan and from $100,000 provided by Debtor's Manager. Debtor's Manager will deposit the sum of $100,000 with Debtor's attorney on or before the date of the Confirmation Hearing on Debtor's Plan.  If the Plan is confirmed, said deposit shall be transferred to the account of the Debtor to be used by the Debtor for funding the Plan.

## A.   **REORGANIZED DEBTOR AND THE DESIGNATION OF ALLOWED CLAIMS AND DISPUTED CLAIMS**

On and after the Effective Date, the Reorganized Debtor will make all distributions under the Plan required to be made by the Reorganized Debtor to or for the benefit of the holders of Allowed Claims.

Pursuant to § 1123(b)(3)(B) of the Bankruptcy Code, the Reorganized Debtor may investigate, file, enforce, exercise, abandon, prosecute, adjust, settle, or compromise all Claims, proceedings, rights, and causes of action of the Debtor and its Estate, other than Claims, proceedings, rights, and causes of action that have been waived, released, compromised, or settled under or in connection with the Plan or otherwise.  After the Effective Date, the Reorganized Debtor reserves its right to pursue any avoidance actions under §§ 544, 545, 547, 548, and 549 of the Bankruptcy Code.

All proceedings relating to the allowance, disallowance, subordination, or estimation of Claims will be diligently investigated, filed, enforced, exercised, abandoned, adjusted, settled, or compromised by the Reorganized Debtor at its sole cost and expense.

Each and every holder of an Allowed Claim that elects to participate in the distributions provided for under the Plan represents and warrants to the Debtor that such holder is authorized to accept in consideration of such Allowed Claims the distributions provided for under the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may, or shall, in any way defeat or modify the rights conveyed or released or obligations undertaken under the Plan.

**B.   REVERTING OF PROPERTY AND DISCHARGE OF CLAIMS**

      **1.   Reverting of Property and Assumption of Business; Substantial Consummation.**

On the Effective Date, all property of the Debtor and its Estate shall revert to the Reorganized Debtor free and clear of any and all Liens, except Liens of secured creditors, Claims, encumbrances, or restrictions, and the Reorganized Debtor shall assume the businesses of the Debtor and its Estate, except as otherwise provided in the Plan or the Confirmation Order.  The Reorganized Debtor will thereafter operate the business and may use, sell, acquire, lease, or otherwise dispose of its property in accordance with the Plan and the Confirmation Order, but otherwise shall be free of any restrictions imposed by the Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules, or the Office of the United States Trustee.

Substantial consummation of the Plan within the meaning of the Bankruptcy Code shall have occurred on the Effective Date when the Reorganized Debtor has assumed the business of the Debtor and its Estate and the distributions under the Plan have commenced in the manner provided in the Plan and the Confirmation Order.

## 2.   Discharge of Claims and Debts

Except as otherwise expressly provided in the Plan, the Confirmation Order or any Final Order with respect to any particular Allowed Claim made pursuant to an agreement or stipulation entered into by the Debtor and the holder of that Allowed Claim, the entry of the Confirmation Order shall, on the Effective Date, discharge and release the Debtor and its Estate from any and all Claims, debts, and Liens that arose before the Confirmation Date and any and all Claims and debts of the kind described in §§ 502(g), 502(h), or 502(I) of the Bankruptcy Code, including, but not limited to, any Claim or debt based on a deficiency, whether or not:

a.   A Proof of Claim based on such Claim or debt is filed or deemed filed under § 1111(a) of the Bankruptcy Code;

b.   Such Claim or debt is an Allowed Claim; or

c.   The holder of such Claim or debt has accepted the Plan.

The confirmation of the Plan does not discharge the Debtor from any debt excepted from discharge under 11 U.S.C. § 523.

## 3.   Effect of Discharge

The discharge and release provided for under the Plan shall have the effects set forth in the Bankruptcy Code, including, but not limited to:

a.   Voiding any judgment obtained against the Debtor on any discharged Claim or debt;

b.   Operating as an injunction against the commencement or continuation of any action, employment of process, or any act to collect, recover, or offset any discharged Claim or debt; and

c.    Operating as an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover, or offset any Claim or debt against any property of the Debtor or its Estate, except as otherwise permitted by the Plan or the Confirmation Order.

## C.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 1.    Assumption

All executory contracts and unexpired leases of the Debtor which have not been previously rejected will be assumed on the Effective Date.

## D.    JURISDICTION OF THE BANKRUPTCY COURT

Section 11.1 of the Plan provides that, after the Confirmation Date and after the Effective Date, the Bankruptcy Court will retain the authority and jurisdiction as is allowed under Title 28 of the United States Code, the Bankruptcy Code or other applicable law.  Section 10.1 further describes a number of specific matters and proceedings with respect to which the Bankruptcy Court will continue to have jurisdiction, including, but not limited to, (1) proceedings relating to Claims, Interests, or rights in, Liens on, or title to property of the Debtor or its Estate; (2) the enforcement, interpretation, or modification of the Plan, the Confirmation Order, or any document, instrument, agreement, or action undertaken in connection with the Plan or the Confirmation Order or any order entered in the Reorganization Case before or after the Effective Date; (3) taxes, tax refunds, tax attributes, and tax benefits and similar related matters with respect to the Debtor, its Estate, or the Reorganized Debtor arising prior to the Effective Date or relating to the period of administration of the Reorganization Case; and (4) applications for compensation or reimbursement of expenses incurred before

or after the Effective Date, to the extent provided under the Bankruptcy Code, the Bankruptcy Rules, the Plan, or the Confirmation Order.

## E.   CONDITIONS TO THE EFFECTIVENESS OF THE PLAN

### 1.   Conditions

The following conditions must occur and be satisfied on or before the Effective Date for the Plan to be effective on the Effective Date:

a.   The Confirmation Order shall have been signed by the Bankruptcy Court and duly entered on the docket for the Reorganization Case by the Clerk of the Bankruptcy Court in form and substance acceptable to the Debtor;

b.   Debtor's Manager shall have made the $100,000 contribution to Debtor;

c.   There shall not be any stay in effect with respect to the Confirmation Order;

d.   The Confirmation Order shall be a Final Order; and

e.   The Plan shall have been approved by the Bankruptcy Court.

### 2.   Waiver of Conditions

The conditions set forth above in paragraphs 1.c. and 1.d. may be waived or modified in whole or in part by the Debtor.  The conditions set forth above in paragraphs 1.a., 1.b., and 1.e. may not be waived or modified in whole or in part by the Debtor.

**F.    MISCELLANEOUS PROVISIONS**

### 1.    Dates on which Distributions are Made

All distributions under the Plan to be made to or for the benefit of the holders of Allowed Claims shall be made by the Reorganized Debtor to or for the benefit of the holders of Allowed Claims as and when due in the manner set forth in the Plan, or as soon thereafter within 30 days as is practicable.

All distributions to be made by the Reorganized Debtor to the holders of Allowed Claims shall be made by checks.

### 2.    Modification of the Plan

The Plan may be altered, amended, or modified only by the Debtor before, on, or after the Confirmation Date pursuant to § 1127 of the Bankruptcy Code. The Plan may not be altered, amended, or modified without the written consent of the Debtor or Order of the Bankruptcy Court, as the case may be.

### 3.    Addresses for Distributions to the Holders of Allowed Claims

Unless otherwise provided in the Plan or a Final Order of the Bankruptcy Court, distributions to be made under the Plan by Debtor to the holders of Allowed Claims shall be made by first class United States mail, postage prepaid, to the latest mailing address set forth in a Proof of Claim timely filed with the Bankruptcy Court by or on behalf of the holder of the Allowed Claim or, if no such Proof of Claim has been timely filed, the mailing address set forth in the Schedules of Assets and Liabilities filed by the Debtor in the Reorganization Case, as amended. It is the duty and responsibility of each holder of an Allowed Claim entitled to participate in distributions under the Plan to notify the Debtor of its most recent address. The Debtor is not

01019690.WPD

required to make any other effort to locate or ascertain the address of the holder of any Allowed Claims.

### 4.   Cramdown

If any impaired Class under the Plan fails to vote to accept the Plan, the Debtor has reserved the right to request that the Bankruptcy Court find that the Plan does not discriminate unfairly and is fair and equitable with respect to each such impaired Class, and confirm the Plan pursuant to § 1129(b) of the Bankruptcy Code.

### G.   RISK ANALYSIS

The following is intended to be a summary of certain material risks associated with the Plan and the Reorganized Debtor, but is not exclusive. Each creditor should analyze and evaluate the Plan and the risks and the other information set forth in this Disclosure Statement as a whole with its, his, or her advisors in determining whether to vote to accept or reject the Plan.

### 1.   Inherent Uncertainty in the Financial Projections

The projections set forth in Exhibit B to this Disclosure Statement represent the best possible prediction of future events based on certain assumptions set forth with such projections. These future events may or may not occur, and the projections may not be relied upon as a guarantee, representation, or other assurance of the actual results that will occur. Because of the numerous risks and inherent uncertainties that will affect the operations of the Reorganized Debtor, the actual results of the Reorganized Debtor may be different from those projected, and such differences may be material and may adversely affect the Reorganized Debtor and its operations. Notwithstanding those general comments, the location of Debtor's real estate is prime

and the market remains strong.  Debtor has confidence in its cash flow projections based on many years' experience.

### 2.    Tax Consequences

Consummation of the Plan will have significant tax consequences that may adversely affect the Reorganized Debtor and certain creditors.  See Section VI below.

### 3.    Other Factors

In addition, other issues unidentified or unquantified at the present may adversely affect the Reorganized Debtor.

## VI.  TAX CONSEQUENCES OF THE PLAN

### A.    INTRODUCTION

**THE DEBTOR BELIEVES THAT EACH HOLDER OF A CLAIM SHOULD DISCUSS ANY POTENTIAL INCOME TAX CONSEQUENCES OF THE PLAN WITH COMPETENT TAX COUNSEL IN ORDER TO FULLY UNDERSTAND THE TAX IMPACT OR POTENTIAL IMPACT OF THE PLAN ON SUCH HOLDER OF A CLAIM OR INTEREST.**

### B.    FEDERAL TAXES

The Plan may modify or affect the timing of the federal income tax treatment of Claims.

DEBTOR MAKES NO REPRESENTATION NOR RENDERS ANY OPINION AS TO WHAT THE INCOME TAX CONSEQUENCES WILL BE OR ARE LIKELY TO BE IN THE CASE OF CONFIRMATION OF THE PLAN TO ANY CREDITOR.  EACH MEMBER OF EACH CLASS IS SOLELY RESPONSIBLE FOR DETERMINING THE FEDERAL INCOME TAX CONSEQUENCES APPLICABLE TO ITS OWN CIRCUMSTANCES.  CREDITORS ARE ADVISED TO CONSULT WITH THEIR TAX ADVISORS CONCERNING THE INDIVIDUAL TAX CONSEQUENCES OF THE PLAN AS IT AFFECTS THEIR PARTICULAR CLAIM OR IN-

TEREST, INCLUDING THE IMPACT OF STATE AND LOCAL TAXES. NO OPINION OF TAX COUNSEL HAS BEEN SOUGHT OR OBTAINED IN CONNECTION WITH THIS DIS-CLOSURE STATEMENT. THE STATEMENTS CONTAINED HEREIN ARE ONLY GENERAL OBSERVATIONS AND ARE NOT TO BE INTERPRETED OR CONSTRUED AS LEGAL ADVICE.

## VII. **ALTERNATIVES TO THE PLAN**

The Debtor believes the Plan provides Claimants with the greatest possible value that can be realized on their Allowed Claims and recommends that you vote to accept the Plan. In the event that the Plan is not confirmed, the alternatives for credi-tors include the filing of another plan by Debtor or another party-in-interest, conversion of the Chapter 11 proceeding to Chapter 7 liquidation, or dismissal of the case. Each of the foregoing alternatives is discussed below.

## A. **LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

### 1. **Description**

Alternatively, a liquidation of the Debtor could be conducted. For the rea-sons set forth below, the Debtor believes that the distributions to Allowed Claims under the Plan will be greater than the distributions that might be received after a liquidation of the Debtor pursuant to Chapter 7 of the Bankruptcy Code. To calculate what members of each Class of Claims and Interests would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code, the Bankruptcy Court must first determine the dollar amount that would be generated from the liquidation of the Debtor (the "Gross Liquidation Value").

As set forth in the Liquidation Table below, the Gross Liquidation Value must be reduced by the costs of the Chapter 7 liquidation in order to ascertain the

possible distributions to holders of Claims and Interests.  The Debtor's costs of liquidation under Chapter 7 would likely include at least the following:  (1) the fees and expenses of the Chapter 7 trustee, as well as those of counsel and other professionals that might be retained by the Chapter 7 trustee; and (2) commissions and selling expenses.  These Allowed Claims, and such other Allowed Claims as might arise in the Chapter 7 liquidation or result from the Reorganization Case, such as Allowed tax Claims, would be paid in full out of the proceeds from a Chapter 7 liquidation before the balance would be made available to make a distribution on account of non-priority unsecured Allowed Claims.

In determining the likely distributions to the holders of Allowed Claims in a Chapter 7 liquidation case, the Bankruptcy Court will also consider whether, and to what extent, the Allowed Claims in a Chapter 7 liquidation would be greater than would be the case if the Plan were confirmed, thereby significantly diminishing the recovery of all unsecured creditors in the Chapter 7 liquidation scenario.  Additionally, in any Chapter 7 liquidation case, the Bankruptcy Court would have to determine the extent, priority, and possible subordination of various Classes of Claims.  These issues could result in litigation and Claims that would both delay and reduce substantially the distribution to creditors in any Chapter 7 liquidation case.

The starting point for determining Gross Liquidation Value is determining the liquidation value of the Debtor's assets.  In the event of a liquidation of the assets of the Debtor, either under Chapter 7 or by the secured creditors themselves, if the case were dismissed and they proceed to foreclose against their collateral, there would be no chance of any excess value to be available.

After considering the effect that a Chapter 7 liquidation is likely to have on the net value of the Debtor's assets, including the adverse effect of a forced sale on the prices obtained for the Debtor's assets, the costs and expenses of a Chapter 7 liquidation, the likely increase in Claims against the Debtor in a Chapter 7 case, and the delay in the distribution, the Debtor has determined that no material liquidation proceeds would be available for distributions to creditors other than Northern Land Company, Inc.  The Liquidation Table below reflects the Debtor's computations of the result of a liquidation.

<u>**Liquidation Table**</u>

The Debtor estimates the value of its properties, and therefore the value of the secured Claims, as follows:

| | | |
|---|---|---|
| Gross sale value of asset:[1] | | $1,750,000 |
| Less: | | |
|    Real estate commissions | $    105,000 | |
|    Estimated bankruptcy estate costs | 6,600 | (111,600) |
| Net proceeds: | | $1,638,400 |
| Class 1: | $ 1,589,893 | |
| Class 2: | 0 | |
| Class 3: | 48,507 | |
| Class 4: | 0 | |
| Value of secured Claims: | | $ 1,638,400 |

---

[1] Debtor believes this was the recent appraised value of Shaner & Associates based on current occupancy.

**B.   DISMISSAL**

Dismissal of the case would have the effect of restoring (or attempting to restore) all parties to their status prior to the filing of the Reorganization Case.  The likely consequence of a dismissal is the re-institution of foreclosure proceedings by Northern Land Company, Inc.  The foreclosure would terminate the Debtor's business operations and virtually assure all other creditors other than the Class 3 tax claim of a zero distribution on their debts.  Therefore, the Debtor believes that dismissal of the case is not a viable alternative to the Plan.

## VIII.  CONFIRMATION REQUIREMENTS

At the hearing on the confirmation of the Plan, the Bankruptcy Court will confirm the Plan only if the requirements of the Bankruptcy Code, particularly those set forth in § 1129, have been satisfied.

**A.   ACCEPTANCES NECESSARY TO CONFIRM THE PLAN**

At the hearing on the confirmation of the Plan, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by the requisite amount and number of Allowed Claims in each impaired Class.  Under the Bankruptcy Code, a Class of creditors is impaired if their legal, equitable, or contractual rights are altered by a proposed Plan of Reorganization.  If a Class is not impaired, each creditor in such unimpaired Class is conclusively presumed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code.  Classes 1 through 4 are impaired under the Plan and holders of Allowed Claims in such Classes are entitled to vote for or against the Plan by completing and returning the ballots mailed to them with the Disclosure Statement in the manner set forth in the ballots.

Under § 1126 of the Bankruptcy Code, an impaired Class of creditors and each holder of a Claim in such Class will be deemed to have accepted a Plan if the holder of at least two-thirds in amount and more than one-half in number of the Allowed Claims in such impaired Class for which completed ballots have been received have voted for acceptance of the Plan.  An impaired Class of equity Interests and each holder of an Interest in such Class will be deemed to have accepted a Plan if the Plan has been accepted by at least two-thirds in amount of the Interests in such Class who actually vote on the Plan.

If all impaired Classes under the Plan do not accept the Plan, the Debtor intends to request the Bankruptcy Court to confirm the Plan pursuant to § 1129(b) of the Bankruptcy Code.  To confirm the Plan under § 1129(b) of the Bankruptcy Code, the Bankruptcy Court must determine, among other things, that the Plan does not discriminate unfairly and that it is fair and equitable with respect to each Class of impaired Allowed Claims that has not voted to accept the Plan.

## B.    BEST INTERESTS OF CREDITORS

To satisfy one of the requirements necessary for confirmation of the Plan, the Debtor must establish and the Bankruptcy Court must find that, with respect to each Class of Allowed Claims under the Plan, each holder of an Allowed Claim in that Class either has accepted the Plan or will receive or retain under the Plan on account of such Allowed Claims property of a value that is at least the amount that such holder would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. Section VII.A. of this Disclosure Statement entitled "Liquidation Under Chapter 7 of the Bankruptcy Code" contains the Debtor's analysis of the likely results of a Chapter 7

01019690.WPD

- 32 -

liquidation of the Debtor.  The Bankruptcy Court must compare the value of the distri-

butions that would be made to each Class in a Chapter 7 liquidation case to the value

of the distributions to each Class under the Plan to determine if the Plan is in the best

interest of each Class of Allowed Claims.  THE DEBTOR BELIEVES THAT THE PLAN IS

IN THE BEST INTERESTS OF THE HOLDERS OF ALL ALLOWED CLAIMS AND PRO-

VIDES VALUE TO ALL OF THEM AT LEAST IN THE AMOUNTS THAT THEY WOULD

RECEIVE IN A CHAPTER 7 LIQUIDATION CASE OF THE DEBTOR.

## C.   **FEASIBILITY**

As a condition to confirmation of the Plan, the Bankruptcy Code requires

the Bankruptcy Court to determine that confirmation is not likely to be followed by

liquidation of the Reorganized Debtor or the need for its further financial reorganiza-

tion.  For purposes of determining whether the Plan meets this "feasibility" standard,

the Debtor has projected the ability of the Reorganized Debtor to meet its obligations

under the Plan and to continue operations.   Debtor's pro forma is set forth in

Exhibit B.  As provided therein, the Reorganized Debtor will be able to meet its obliga-

tions under the Plan.

Based on many years' experience in owning and operating the property, the

Debtor believes that the results set forth in the financial projections are reasonable and

attainable by the Reorganized Debtor and that the Reorganized Debtor will have suffi-

cient funds available to operate and meet the obligations under the Plan.  Much effort

has been made to ensure that the financial projections and the assumptions on which

they are based are reasonable.  The Debtor cautions, however, that no representations

can be made by the Debtor with respect to the accuracy of the financial projections or

01019690.WPD

the Reorganized Debtor's ability to achieve the projected results.  Many of the assumptions on which the financial projections are based are subject to major uncertainties. Some assumptions inevitably will not materialize and unanticipated events may affect the actual financial results.  Therefore, the actual results achieved throughout the projection period will vary from the projected results and the variations may be material.

Exhibit B and Schedules B-1, B-2, and B-3 disclose that the Debtor will have during the first year of the plan $280,534 of cash flow.  Its rehabilitation expenses are projected to be $27,777 and its Plan payments will aggregate $181,254.  Accordingly, the Debtor will have an excess of $71,503 for any additional improvements that Debtor decides to make or for reserves.  In Years 2 through 5, net operating income will be $182,212 per year and Plan payments will be $181,254 for annual excess of $958.[2]

Debtor believes that it is feasible to refinance Classes 1 and 2 at the end of the four-year period.  At that point, Classes 3 and 4 will be paid in full and the only debt remaining will be the balance to Class 1 of $1,831,888 and the balance to Class 2 of $115,240.  Refinancing the first mortgage will only require a loan of $1,831,888, which would be 79.6% of the value of the property ($2,300,000); additionally, the payments on a 25-year amortization at 6% on a refinance of that $1,831,888 loan would total $11,802 per month.  When compared to the monthly net operating income of $15,176, the debt service coverage ratio on the refinanced first mortgage will be 1.34% to one, which is more than adequate.  The refinancing of both

---

[2] The rents projected are at 2006 levels; Debtor has not raised rents in over three years.  If needed, the Debtor believes that it has the ability to raise rents.

mortgages would result in a payment of $12,607 or a 1.25% to one debt service coverage ratio. Thus, refinancing would appear to be feasible.

HOLDERS OF CLAIMS AGAINST THE REORGANIZED DEBTOR SHOULD CAREFULLY READ AND CONSIDER THE FACTORS SET FORTH ABOVE AS WELL AS OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THE REORGANIZED DEBTOR'S ABILITY TO MAKE DISTRIBUTIONS IN ACCORDANCE WITH THE PLAN IS BASED ON THE REORGANIZED DEBTOR'S ABILITY TO EARN FUNDS FROM THE BUSINESS COMPARABLE TO THE PREVIOUS FIVE (5) YEARS' EARNINGS. THE DEBTOR BELIEVES THAT THE PLAN IS FEASIBLE, AND THE DEBTOR URGES THE HOLDERS OF ALL ALLOWED CLAIMS VOTING ON THE PLAN TO VOTE TO ACCEPT THE PLAN.

MOONING OVER BROADWAY, L.L.C.

By:  /s/ Aandrea Carter
        Aandrea Carter


BERMAN DeLEVE KUCHAN & CHAPMAN, LC

By:  /s/ Ronald S. Weiss
    Ronald S. Weiss       #21215

1100 Main Street, Suite 2850
Kansas City, MO  64105
816/471-5900
816/842-9955 (Telecopier)
rweiss@bdkc.com
ATTORNEYS FOR DEBTOR
MOONING OVER BROADWAY, L.L.C.